21-4073. Council for Appellant, if you'd make your appearance and proceed. Good morning, your honors. Michelle White on behalf of Appellant's Southern Utah Wilderness Alliance et al. I intend to reserve three minutes of my time for rebuttal. Your honors, this is a straightforward case. It turns on the application of foundational administrative law principles to the Bureau of Land Management's cursory and flawed decision to allow Garfield County to chip seal the Stratton segment. I'd like to first touch on the arbitrary and capricious nature of VLN's stated reasoning. Next, I'll discuss the United States' post hoc arguments that nevertheless fail to provide a rational basis for VLN's decision. On the first point, the entirety of VLN's reasoning relied on this court's opinion in Hodel as an adjudication of Garfield County's rights, asserting, quote, the Tenth Circuit Court of Appeals clearly stated that Garfield County is the holder of an RS-2477 right-of-way for the entire 66-mile length of the Burr Trail, end quote. The BLM offered no analysis of its own, and this conclusion was arbitrary and capricious for at least three reasons. First, the Stratton segment, which is a part of Segment 3 beginning on the eastern side of Capitol Reef National Park, has never been adjudicated. Instead, the Hodel litigation involved only Segment 1 of the Burr Trail, which begins in Boulder, Utah, and ends on the western edge of Capitol Reef National Park. So let me ask you a question. Do you dispute, and I'm not asking you about the scope, the existence, do you dispute the existence of an easement across that segment? Which segment, Your Honor? The one you just said was... The western end? Well, you said only one of them was addressed in Hodel. Correct. Which was not the one that's at issue in this case, right? Correct. So the segment at issue in this case, which I get them confused, do you dispute that there's an easement across that segment? Yes, we do dispute that, Your Honor. Okay. Is it your position, is that simply because there's never been a quiet title action on it, and so no court decision adjudicating it? Correct. That is one of the bases of our belief that there is no right-of-way over the western end. And indeed, the Garfield County has a currently pending Quiet Title Act claim in the District of Utah for the western 28-mile segment. So it also believes it does not have a right-of-way or Title II. Okay. Well, it probably believes it does, but someone's probably contesting it, right? Correct. It has not been adjudicated yet. Is it your position that every right-of-way, I can't remember the section of these right-of-ways, but every right-of-way under this section is basically not in existence until it's adjudicated under the Quiet Title Act? I think I would put a slightly different point on it, Your Honor. We agree with the United States that the right-of-way under RS-2477 comes into existence without administrative formalities. However, that doesn't mean that it in actuality exists, that the county ever accepted it. That is up to the federal courts to adjudicate in a Quiet Title Act claim. So our contention is that here, BLM has acted arbitrarily and capriciously and doesn't have a rational basis for its determination or decision here that Garfield County holds a right-of-way to the Stratton segment. And just to clarify the separate segments, Your Honor, Hodel again involved the western 20-most, 28-most miles of the Bird Trail. Segment 2 is the portion within Capitol Reef National Park. And the Stratton segment is a part of segment 3, beginning on the eastern side of Capitol Reef National Park. Why does there have to be an adjudication in the context of this case? When SUA v. BLM says that the agency is entitled to make this determination for its own purposes, nobody's claiming that there's a Quiet Title Action adjudication. But at the same time, the case is in an unusual posture from your perspective in that the federal government isn't contesting. None of the parties are contesting, only you are. Correct. The United States doesn't contest Garfield County's claim in this instance. However, Your Honor, we have not argued in this case that an adjudication is necessarily the only way in which BLM can reach its decision that an RS-2477 was established. What we have argued is that under fundamental principles of administrative law, this court must look to the decision-making process that BLM purported to follow. And here, during the decision-making process, BLM stated that it was following its Instruction Memorandum 175-2008. That document lays out only two pathways for the agency's decision here. One is by following a process called a non-binding administrative determination outlined in a separate Instruction Memorandum. The BLM does not claim that it followed that process in a separate Instruction Memorandum, and nor does the United States argue that it did. Well, the IM is expired, and it's not binding, so doesn't that matter? Your Honor, we are not arguing that it is binding on the BLM here. What we are simply pointing to the Instruction Memorandum is to illustrate the path, the decision-making pathway that BLM purported to follow. And we believe it was attempting to, that the record clearly demonstrates, BLM was attempting to rely on, excuse me, HODLs and adjudications. And relying on HODL, if the BLM inferred from HODL a finding as it relates to the Stratton segment, what would be arbitrary and capricious about that? I mean, in other words, if it looked at the Stratton segment and correlated it with the segment that was under evaluation in HODL and made a determination for its own purpose underlying that point, that this also was a right-of-way, what would be arbitrary and capricious about that mode of logic? Your Honor, I believe that if it were the case that BLM had examined HODL and then examined which facts apply to the Stratton segment and concluded that those relevant facts, under the current legal standard, are sufficient to establish an RS-2477 right-of-way, that may be rational. However, that is not what BLM did here. All it did was invoke the HODL opinion and move on without any further analysis. Well, I mean, what level, I mean, I understand under the APA we operate under a principle of that why isn't it adequate to provide essentially the authority upon which you make your judgment? And that's what they did. They relied upon the authority in which they made their judgment. I think most rational people, as when we cite cases in the law, would assume that what you're saying is that the premise of that case correlates with this case. I mean, I don't see what's . . . and no, we're not talking about optimal. We're talking about arbitrary and capricious. What's problematic with that? And then I want to get to another point that you raised. Please go ahead. Absolutely, Your Honor. So I would first like to point out that the sentences in the HODL opinion that BLM relies on here are background dicta. And BLM relies on them for the proposition that HODL adjudicated or applied to the entire Burr Trail. But Judge Anderson made it very clear in the district court that his findings of fact and conclusions of law were limited to segment one of the Burr Trail. And this court in HODL also stated that the current controversy only arose from the county's immediate plans to improve the western 28 miles. Additionally, in Garfield County, Judge Jenkins, who was addressing segment two of the Burr Trail, had the record from HODL in front of him, the transcripts and the briefing. And he also stated that Judge Anderson's findings of fact had been limited to segment one of the Burr Trail. And my final point on this is that HODL's conclusion, as the United States concedes, relies on uses that are in fact irrelevant to determining whether or not an RS-2477 right-of-way was established. And so by relying on HODL's conclusion, BLM has also relied on these irrelevant uses. Well, let me ask that question. Irrelevant in the sense of being over-inclusive, in the sense that there were uses that were relevant in HODL that are not relevant as to the Straton segment? Yes, the uses... Okay, well, if they were over-inclusive, that doesn't get at the fact that when they cite they aren't referencing the portion that matters. Your Honor, I don't believe that over-inclusive is the appropriate term here. It was over-inclusive insofar as it did rely on impermissible uses and potentially some permissible uses. However, it is impossible to pull apart those uses and decide if HODL would have reached the same conclusion based on only the permissible uses of the Burr Trail. As a matter of regulatory judgment, why is that not possible? I mean, I'm not an expert in this and I can figure out how to do that. I mean, you can sit there and match facts and make a judgment. That's what agencies do. I don't understand why that... Again, we're not talking about whether it's optimal. We're talking about whether what they did had no foundation to it. Your Honor, it may be possible to pull apart the uses, but the BLM did not do that here. Okay, let me just make sure I understood you correctly on one other point. I understood that one of your arguments of error, contentions of error, was that the adjudication to require title action was a condition proceeding to the actual validation of an RS-2477. Is that not what you're saying? I mean, I think that was your first issue of error related to the question of whether  Correct, Your Honor. So let me back up a step. We did point to the fact that there is no quiet title act claim as one reason that BLM's decision here was arbitrary and capricious. We did not contend in this case that a quiet title action is necessary. We assumed that arguendo, even if the Bureau of Land Management can rely on a non-QTA adjudication, which is an issue it did not raise until this appeal, that BLM nevertheless acted arbitrarily and capriciously. Okay, so the nature of the first issue is simply to, and again, it seemed to me, and you read that as a standalone error, but the nature of your first issue then is that it contributes to the arbitrary and capriciousness because it is one leg that doesn't exist on the stool, essentially. That is correct, Your Honor. Yes. We would agree that if HODL had been a quiet title act adjudication that applied to the BLM, then BLM would have acted rationally by simply relying on that conclusion and moving on without any further analysis. Don't you have a more fundamental problem with all of these arguments, and that is that the issues in this case, at least at some level, have been addressed administratively and in the courts a dozen times over the past 30 years or more? No, Your Honor, we don't believe we have a problem there for two reasons. I'm sorry? I said I'm not finished asking you. So they've been addressed a dozen times in the past 30 or 40 years, and your argument seems to presuppose that BLM has to forget that it was a party to all those administrative and court actions, and that it has to basically go back through and cobble together every fact that ever came out in any of those cases, and it can't sort of have a more summary reliance on one of the more seminal cases. Isn't that a problem? That is not a correct statement of our argument, Your Honor. No, I know it's not your argument. You've not argued that, but I think it underlies your argument that they have to ignore all of these past decisions. BLM certainly does not need to ignore those past decisions, Your Honor. However, as we argue in our briefing, the prior administrative determinations and judicial decisions, number one, many of them are post hoc arguments by the United States. And number two, none of those prior determinations, judicial or administrative, have applied the legal standard as articulated by this court in SUA v. BLM from 2005 in San Juan County v. the United States in 2014. What should the BLM have done that would satisfy you today? Your Honor, it needed to further analyze whether, based on only the permissible uses of the Byrd Trail as relevant to the Stratton segment, under the current legal standard, the county has an RS-2477 right of way. If the court has no further questions, I'll reserve my last five seconds. All right. Thank you. May I remove my mask? Yes, please. Thank you, Your Honors. Good morning, Your Honors. May it please the Court, my name is James Mason. I'll be arguing today on behalf of the Bureau of Land Management. Also with me at council table is Tess Davis. Ms. Davis is representing the state and county. We've decided to split our time. I'm going to take 14 minutes and Ms. Davis is going to take one. Your Honors, among the thousands of RS-2477 right of ways that are claimed by states and counties across the West, the Byrd Trail is unique because the validity and scope of this right of way has been the subject of litigation for nearly 40 years. The result is a long line of decisions and determinations by courts and federal agencies. In all that time, every court and every agency has reached the same conclusion. The county holds a valid right of way for the Byrd Trail. Well, why don't we start with the allegation of a post hoc rationale here? I mean, you only cite O'Dell and these later in the administrative proceeding, as I recall anyway. You can correct me if I'm wrong on that. And then on appeal, we have the host of administrative or in the district court, I think pieces of litigation that do relate to this general area. I mean, under principles of administrative law, as you were alluding to, what do we do with that? Your Honor, it's not post hoc rationalization because it's in the administrative record. The administrative record here, BLM's reasoning on this specific point, the validity of the existence of the county's right of way is set out not just in its response to comment that Sue has cited, but also in a memo that prepared for the file that it prepared before it made its decision, which means it's pre hoc, not post hoc reasoning. That can be found in the supplemental appendix at pages 24 to 25. The title of that memo is Byrd Trail, Valid R.S. With all these authorities that you later cite, were they included in that document? Yes. That memo cites the decisions that I cite. It quotes the statements that I've quoted. It's part of the record. As an APA case, BLM's reasoning here has to be reviewed on the entire administrative record. To the extent that that two-page memo does not elaborate at great length on BLM's reasoning, that doesn't matter. The court is, of course, allowed to connect the dots. It's allowed to, it must affirm BLM's reasoning as long as it can reasonably be discerned from the record. That's the Supreme Court's decision in Bowman Transportation, 419 U.S. 281. So this isn't post hoc rationalization. It's pre hoc rationalization. And you can look at the record and see that reasoning there. Why did they only cite Hodel then? Well, they cite in the response to comment. So Suha submitted comments here, right? And it's important to note that you can find Suha's comments in the record as well. And they don't raise many of the arguments that they've raised here today. They're in the appendix at pages 127 to 128. They presented only narrow legal arguments in those comments. They never said, for example, you've heard Suha say that what BLM should have done was gone back to the drawing board, even though this issue has been decided many times by BLM, by the courts, should have started over and applied what they claim are new legal standards from San Juan County in this court's decision in Suha v. BLM. But Suha never said that in its comments. They didn't tell the agency that during the decision-making process. So what we have here, the body of BLM's reasoning, is not just that single response to comment, which cites Hodel, but also this memo to file that's in the administrative record that explains BLM's reasoning more fully. So in your brief, it was either you or the state's brief, but I think it was in yours, you said that your opposing counsel, that Suha didn't dispute the existence of the right-of-way. And I think I heard today a statement that they do, in fact, dispute the existence of the right-of-way. And so can you tell me where in the record from the district court or somewhere else they didn't dispute that there was a right-of-way? So when I made that statement, Your Honor, what I was referring to, of course, was the fact that we had litigated the existence of the right-of-way in the original Hodel district court case. Suha said there's no right-of-way. The issue was litigated. The district court remanded that issue to BLM to make its own determination. BLM made its own determination, concluding that the county had a valid right-of-way. Then the district court held a 25-day trial, heard evidence. Suha participated in all of that, and Suha lost. It litigated that issue and lost. And then the decision, of course, was appealed to this court. And we have the Hodel Tenth Circuit decision. And on appeal, of course, Suha conceded the existence of the right-of-way, and that issue wasn't presented to this court. So that's what I was referring to. To the extent that Suha wants to clarify that it has more nuanced legal arguments that it challenges, for example, the existence of the right-of-way in segment three, I don't object to that. I mean, I'm happy to have that be corrected on that point. I'm not sure I understand what Suha's argument is, frankly, even now. I mean, they've made a lot of reference to the adjudication and to whether it's been adjudicated. It remains unclear to me whether Suha is claiming that there has to be a quiet title action first, before the county has a right-of-way, and before it can improve that right-of-way. Here at argument, I mean, of course, if that was Suha's argument, that's incorrect. Because as the court held in Suha v. BLM, BLM's always had the authority to determine the validity of these rights-of-ways for its own internal purposes. And BLM needs that authority. BLM administers millions of acres in the West. There are thousands and thousands of claimed RS-2477 right-of-ways. And BLM has to be able to move forward and manage these landings and make decisions. Here at argument, Suha may have suggested instead that what BLM was saying, that its argument is rather that, well, it doesn't have to be adjudicated first. But BLM said it had been adjudicated. And it was wrong about that. And therefore, its decision is arbitrary and capricious, a sort of softer version of the argument. But that version doesn't work either. Because BLM didn't say it was adjudicated. If you go to the response to comment, what BLM said is, we're relying on what this court stated in Hodel, that the county has a valid right-of-way to the Burr Trail. It didn't say, we have determined that this has been adjudicated. It seems that Suha is trying to cobble something together out of this old interior policy instruction memo 2008-175. That policy has expired. It's been formally rescinded. It never applied here. All right. Then what is the decisional framework one applies if you're not operating under that guidepost? So, I mean, again, Your Honor, this is fundamentally an APA case, right? So the question for the court is, did BLM make a rational decision? Yes, but one way you've judged that is what the methodology is BLM uses in making its decision, right? Right. So the question, I think this case, Your Honor, with respect, is a bad case to try to figure out exactly what methodology BLM has to use in general for RS-2477 right-of-ways. You know, for example, in Suha v. BLM, that opinion discusses the process that BLM used there, right? In that case, BLM did a very thorough and formal adjudication where it issued public notices. It called on the county for evidence, reviewed the evidence. It held field investigations. It went out and made draft determinations. It published them for public comment. And that process, which the court affirmed, was probably appropriate in that case where those right-of-ways had not been the subject of litigation and agency determinations for 40 years. Here, the facts of this case are really quite unique because we have the original district court decision in Hodel where the issue of the validity of this right-of-way was remanded to BLM. And BLM made a decision there. And then we had a 25-day trial. And then the court ruled on that issue. So it may be that what BLM did here, which is to review the long line of unanimous decisions, all of which by courts and agencies have held that the county has a valid right-of-way to the Burr Trail, that process probably wouldn't work anywhere else for any other RS-2477 right-of-way. I'm not aware of any other RS-2477 right-of-way that's been the subject of so much process. OK. Well, to the extent that you're relying on that process, then my question is this. At least what I understood your adversary counsel to say is that process really didn't relate to Segment 3. And that a rational distinction could be made between the Hodel litigation that related to other portions of the Burr Trail and the Stratton segment. At least that's what I understood her to say. If that's true, then doesn't that undercut the ability to, as I hear you say, that there would be a summary, sort of summary analysis that would be necessary because you would be relying upon the process? Well, if the process is inapposite, doesn't that undercut the legitimacy of what you're doing? Yes, Your Honor. It would if that were true, if Hodel, that analysis were limited in that way. But it's not. The truth is that the district court in Hodel, you can read its discussion of the existence of this right of way. And it doesn't include the various caveats and limitations that Sue is trying to impose on it. It doesn't say, I find the county has a valid right of way for the Burr Trail for Segment 1. And we know that the evidence that the court reviewed in Hodel was not limited to Segment 1 because later when the court went back to these issues in Garfield County, it was dealing with Segment 2, but it still went back and relied on the evidence in Hodel. And we know that it wasn't limited to Segment 1 because one of the points that the court found persuasive was that a public highway had been built by the county from Boulder to the Bullfrog Marina. And that route implicates the entire Burr Trail, not just Segment 1, 2. It includes this segment as well. Is the same true with the traditional uses, whether driving cattle to market or otherwise, the whole length of that 66 miles was used as one continuous unit? It is not my understanding that that's true, Your Honor. I don't think, I think the amount of evidence, the scope of the evidence here is significant. And I can't say that it all applies to every segment. I can't make that characterization. I do want to say that I think this is a bit of a gotcha argument by Sue. I mean, there was a public process here. BLM took public comment on this environmental assessment. Sue is now saying, well, what you should have done is you should have applied these new legal standards from Sue v. BLM in San Juan County. You should have looked at whether or not the courts relied on any private uses and whether or not there's been sufficient continuous public use to have been acceptance of the right-of-way. But Sue didn't make that, didn't say that in its comments, right? You can look at their comments. They're in the appendix of pages 127 to 128. They never raised this argument. If they had, BLM would have presumably had an opportunity to and would have responded. But this- By never, I'm sorry, I didn't mean to cut you off. By never raised, is the implication there an exhaustion problem? Or what is the implication of them not having raised it below? Well, I mean, I think, I don't know if it's formally an exhaustion problem. My point, Your Honor, is that when we're asking ourselves, did BLM make a rational decision here? We have all this evidence on one side. And we have nothing on the other side. Sue didn't submit any evidence saying, well, hold on. There are different uses in Segment 3. All the uses in Segment 3 were private. It wasn't long enough, or whatever their claims are. They didn't submit that evidence. So when BLM made its decision on the record that was before it, everything was just this long line of unanimous decisions and the consistent decisions of the agency. Okay. So rational decision based upon the record before it. And if there is going to be a contention of irrationality because they didn't consider some factors, then it was incumbent upon them to present those factors in the administrative proceedings. Is that the point? Yes, that's the point, Your Honor. All right. Let's see. Well, Your Honors, so in conclusion, the facts surrounding the Burr Trail are unique. Unlike most RS-2477 right-of-ways, the evidence for this right-of-way has been weighed by courts and federal agencies. Every court and every agency has reached the same conclusion. Garfield County has a valid right-of-way for the Burr Trail. BLM rationally relied on those decisions here. Its decision should be upheld, and the judgment of the district court should be affirmed. Unless you have anything further, I will turn over my remaining time to Ms. Davis. No. Thank you. Thank you, Your Honors. Thank you. Your Honors, and may it please the Court, Tess Davis for the State of Utah and Garfield County, Utah. We support the arguments set forth by the United States, and I would add merely that the county and the BLM can still coordinate on these types of road decision. The county and the state have claimed the full length of the Burr Trail from Boulder to Bullfrog. But even without that, there are many other types of situations, such as maintenance MOUs or Title Vs, where the BLM and the state and the county work together on these projects. And this court has repeatedly encouraged dominant and survey and estate holders to work together on these sorts of projects and has never forced them into litigation. And that's all I have. Okay. Thank you. Thank you. We'll give you a minute for rebuttal. I have two very brief points, Your Honor. The first is that for the first time in this oral argument, the United States is faulting Suha's comments. However, it's important to note that the BLM did not articulate that it was including all of the public uses that that decision discusses until after Suha had an opportunity to comment on BLM's project. Well, it's not like Hodel was new to you. I mean, you knew it was out there. I mean, if you thought there was some nuance to be drawn, why didn't you draw it? We did, Your Honor. We stated in our comments that Segment 3 had never been part of that litigation, never been part of federal litigation at all, and that no part of the Burr Trail had ever been part of a Quiet Title Act. It was not until this litigation that the United States, this case on appeal, that the United States articulated the BLM could rely on a non-Quiet Title Act adjudication. And second, and finally, Your Honor, the BLM itself has differentiated between the different segments of the Burr Trail. And that can be found in the record at the Appellant's Appendix 129 to 130. There, the BLM states that it would retain the current chip sealing level of Segment 1 and Segment 3, but leave the Stratton segment unpaved, and that that would satisfy the county's scope. All right. You've run over. Thank you, counsel, for your fine arguments. Case is submitted.